1
2
3
4
5
6
7
8                       **IN THE UNITED STATES DISTRICT COURT**

9                      **FOR THE EASTERN DISTRICT OF CALIFORNIA**

10

11     CHRISTINA LEE-KLEIN,                          No.  2:19-CV-2335-DMC

12                    Plaintiff,

13          v.                                       MEMORANDUM OPINION AND ORDER

14     COMMISSIONER OF SOCIAL
       SECURITY,
15
                       Defendant.
16

17

18               Plaintiff, who is proceeding with retained counsel, brings this action for judicial

19     review of a final decision of the Commissioner of Social Security under 42 U.S.C. § 405(g).

20     Pursuant to the written consent of all parties, ECF Nos. 8 and 9, this case is before the undersigned

21     as the presiding judge for all purposes, including entry of final judgment. See 28 U.S.C. § 636(c).

22     Pending before the court are the parties' briefs on the merits, ECF Nos. 17 and 21.

23               The Court reviews the Commissioner's final decision to determine whether it is:

24     (1) based on proper legal standards; and (2) supported by substantial evidence in the record as a

25     whole.  See Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999).  "Substantial evidence" is

26     more than a mere scintilla but less than a preponderance.  See Saelee v. Chater, 94 F.3d 520, 521

27     (9th Cir. 1996).  It is ". . . such evidence as a reasonable mind might accept as adequate to support

28     a conclusion." Richardson v. Perales, 402 U.S. 389, 402 (1971).  The record as a whole,

                                                      1

including both the evidence that supports and detracts from the Commissioner's conclusion, must be considered and weighed.  See Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986); Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985).  The Court may not affirm the Commissioner's decision simply by isolating a specific quantum of supporting evidence.  See Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989).  If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a particular finding, the finding of the Commissioner is conclusive.  See Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987).  Therefore, where the evidence is susceptible to more than one rational interpretation, one of which supports the Commissioner's decision, the decision must be affirmed, see Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002), and may be set aside only if an improper legal standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

For the reasons discussed below, the matter will be remanded for further proceedings.

## I.  THE DISABILITY EVALUATION PROCESS

To achieve uniformity of decisions, the Commissioner employs a five-step sequential evaluation process to determine whether a claimant is disabled.  See 20 C.F.R. §§ 404.1520 (a)-(f) and 416.920(a)-(f).   The sequential evaluation proceeds as follows:

Step 1     Determination whether the claimant is engaged in substantial gainful activity; if so, the claimant is presumed not disabled and the claim is denied;

Step 2     If the claimant is not engaged in substantial gainful activity, determination whether the claimant has a severe impairment; if not, the claimant is presumed not disabled and the claim is denied;

Step 3     If the claimant has one or more severe impairments, determination whether any such severe impairment meets or medically equals an impairment listed in the regulations; if the claimant has such an impairment, the claimant is presumed disabled and the claim is granted;

/ / /

2

| | | |
|---|---|---|
| Step 4 | | If the claimant's impairment is not listed in the regulations, determination whether the impairment prevents the claimant from performing past work in light of the claimant's residual functional capacity; if not, the claimant is presumed not disabled and the claim is denied; |
| Step 5 | | If the impairment prevents the claimant from performing past work, determination whether, in light of the claimant's residual functional capacity, the claimant can engage in other types of substantial gainful work that exist in the national economy; if so, the claimant is not disabled and the claim is denied. |

See 20 C.F.R. §§ 404.1520 (a)-(f) and 416.920(a)-(f).

To qualify for benefits, the claimant must establish the inability to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted, or can be expected to last, a continuous period of not less than 12 months.  See 42 U.S.C. § 1382c(a)(3)(A).  The claimant must provide evidence of a physical or mental impairment of such severity the claimant is unable to engage in previous work and cannot, considering the claimant's age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.  See Quang Van Han v. Bower, 882 F.2d 1453, 1456 (9th Cir. 1989).  The claimant has the initial burden of proving the existence of a disability.  See Terry v. Sullivan, 903 F.2d 1273, 1275 (9th Cir. 1990).

The claimant establishes a prima facie case by showing that a physical or mental impairment prevents the claimant from engaging in previous work.  See Gallant v. Heckler, 753 F.2d 1450, 1452 (9th Cir. 1984); 20 C.F.R. §§ 404.1520(f) and 416.920(f).  If the claimant establishes a prima facie case, the burden then shifts to the Commissioner to show the claimant can perform other work existing in the national economy.  See Burkhart v. Bowen, 856 F.2d 1335, 1340 (9th Cir. 1988); Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986); Hammock v. Bowen, 867 F.2d 1209, 1212-1213 (9th Cir. 1989).

/ / /

/ / /

/ / /

/ / /

3

## II.  THE COMMISSIONER'S FINDINGS

Plaintiff applied for social security benefits on April 9, 2015.  See CAR 20.[1]  In the application, plaintiff claims disability began on September 9, 2011.  See id.  Plaintiff's claim was initially denied.  Following denial of reconsideration, plaintiff requested an administrative hearing, which was held on March 1, 2017, before Administrative Law Judge (ALJ) Daniel Myers.  In an August 16, 2017, decision, the ALJ concluded plaintiff is not disabled based on the following relevant findings:

      1.      The claimant has the following severe impairment(s): depression with anxiety, history of brain aneurysm status post cerebral angiogram with coiling, and asthma;

      2.      The claimant does not have an impairment or combination of impairments that meets or medically equals an impairment listed in the regulations;

      3.      The claimant has the following residual functional capacity: the claimant can perform light work; she can occasionally stoop, kneel, crouch, crawl ,and climb stairs; she cannot be exposed to temperature extremes; she must avoid hazards such as unprotected heights and dangerous, moving machinery; she must avoid concentrated exposure to dust, gases, fumes, odors, and pulmonary irritants; she can perform routine, repetitive tasks; she can only exercise simple work-related judgments and decisions; she can have no more than occasional changes to the routine work setting; she can have no more than occasional interactions with members of the public, coworkers, and supervisors;

      4.      Considering the claimant's age, education, work experience, residual functional capacity, and vocational expert testimony, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

See id. at 22-32.

After the Appeals Council declined review on May 24, 2018, this appeal followed.

/ / /

/ / /

/ / /

/ / /

---

[1]      Citations are to the Certified Administrative Record (CAR) lodged on June 3, 2020.  See ECF No. 14.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### III.  DISCUSSION

In her opening brief, Plaintiff argues: (1) the ALJ erred at Step 2 in determining the severity of Plaintiff's impairments; (2) the ALJ erred in weighing the medical opinion evidence; (3) the ALJ erred with respect to evaluation of Plaintiff's statements and testimony; (4) the ALJ erred in discrediting lay witness evidence; (5) the ALJ's ultimate residual functional capacity finding is flawed due to errors regarding severity, evaluation of medical opinions, evaluation of Plaintiff's statements and testimony, and evaluation of lay witness evidence; and (6) the ALJ's vocational findings at Step 5 are flawed.

**A.**     **Severity Determination**

At Step 2, the ALJ found that Plaintiff "has the following severe impairments: depression with anxiety; history of brain aneurysm, status post cerebral angiogram with coiling; and asthma (20 CFR 404.1520(c) and 416.920(c))". See CAR 22-23. Specifically, the ALJ concluded that:

> The above medically determinable impairments significantly limit the ability to perform basic work activities as required by SSRs 85-28 and 96-3p.
>
> There is objective evidence in the medical record that the claimant has also been evaluated and treated for hypertension, bilateral carpal tunnel syndrome, status post releases, and plantar fasciitis (Exhibits 3F/6, 4F/20, 6F/19, 8F/33). However, these conditions were being managed medically, and should be amenable to proper control by adherence to recommended medical management and medication compliance. Furthermore, no aggressive treatment was recommended or anticipated for these conditions. Accordingly, the claimant's medically determinable impairments of hypertension, bilateral carpal tunnel syndrome, status post releases, and plantar fasciitis are nonsevere.
>
> The claimant also has a history of obesity, as evidenced by her weight of 220 pounds at 5'3" tall which calculates to a body mass index (BMI) of 39 (Exhibit 4F/20). I have considered the potential impact of obesity in causing or contributing to co-existing impairments as required by Social Security Ruling 02-0lp. The claimant's weight, including the impact on her ability to ambulate as well as her other body systems, has been considered within the limitations of the claimant's residual functional capacity described below.
>
> Id.

/ / /

/ / /

1          Plaintiff argues that the ALJ committed a harmful error at Step 2 by failing to

2    make severity findings as to Borderline Personality Disorder (BPD) and de Quervain's

3    tenosynovitis (DQT) despite ample evidence of the impairments, including a diagnosis, in the

4    medical record. See ECF No. 17, pg. 19. Plaintiff also argues that the ALJ's non-severity finding

5    as to carpal tunnel syndrome (CTS) was not supported by substantial evidence. Id. at 19-20. The

6    Commissioner argues that Plaintiff forfeited the issues of BPD, DQT, and CTS by failing to

7    allege that they were severe impairments in the administrative proceedings. See ECF No. 21, pgs.

8    14-15. The Court addresses the question of waiver, then addresses the issues in question and

9    whether the ALJ erred at Step 2.

10                   1.      Waiver

11          In arguing waiver of the issues, the Commissioner relies on Meanel v. Apfel, 172

12   F.3d 1111, 1115 (9th Cir. 1999) ("When claimants are represented by counsel, they must raise all

13   issues and evidence at their administrative hearings in order to preserve them on appeal.").

14   Plaintiff contends that she was not represented by counsel before the ALJ, but rather was

15   represented by a non-attorney with no affiliation to Plaintiff's current counsel. See CAR 133;

16   ECF No. 24, pgs. 6-8. Plaintiff is correct; however, courts have interpreted the Meanel exhaustion

17   rule to include non-attorney representatives. See Keifer v. Saul, 789 F.App'x 581, 582 (9th Cir.

18   2020).

19          Meanel, however, was called into question when the Supreme Court held that

20   because the "[Social Security Appeals] Council has the primary responsibility of identifying and

21   developing the issues[,] . . . a judicially created issue-exhaustion requirement is inappropriate."

22   Sims v. Apfel, 530 U.S. 103, 112 (2000) (noting specifically that the question of issue exhaustion

23   before the ALJ was not before the court). The Ninth Circuit seemed to reconcile Meanel with

24   Sims holding that the waiver doctrine could still apply to issues not raised before the ALJ where

25   the claimant did not show "good cause for the failure to incorporate such evidence into the record

26   in a prior proceeding." Shaibi v. Berryhill, 883 F.3d 1102, 1109 (9th. Cir. 2017). However, the

27   holding in Shaibi "[s]pecifically . . . encompasses challenges based on an alleged conflict with

28   alternative job numbers." Id. Still, other courts have relied on Shaibi and Meanel when enforcing

6

1   the waiver of issues not raised before the ALJ. <u>See</u> <u>Terri E. v. Comm'r of Soc. Sec.</u>, No. 3:18-

2   CV-01382-IM, 2020 U.S. Dist. LEXIS 27221 at *11 (D. Or. Oct. 29, 2020) (holding that failure

3   to raise the issue of headaches before the ALJ waived the issue in court); <u>Haydostian v. Colvin</u>,

4   No. 1:15-CV-00058-EPG, 2016 U.S. Dist. LEXIS 86864 at *33, 38 (E.D. Cal. July 1, 2016)

5   (holding that the ALJ did not err by failing to specifically address Plaintiff's sinusitis because it

6   was not raised during administrative proceedings).

7        The Court does not seek to resolve whether the <u>Meanel</u> waiver doctrine applies in

8   this instance because regardless, courts have interpreted <u>Meanel</u> as granting reviewing courts

9   discretion in applying the waiver. <u>See</u> <u>Meanel</u>, 172 F.3d at 1115 (noting that waiver will be

10  excused "when necessary to avoid a manifest injustice"); <u>Harris v. Saul</u>, No. 1:19-CV-01084-

11  GSA, 2020 U.S. Dist. LEXIS 203150 at *18-19 (E.D. Cal. Oct. 29, 2020) (declining to find

12  waiver when Plaintiff was represented by a new attorney on appeal); <u>Rayborn v. Colvin</u>, No.

13  3:15-CV-01478-HZ, 2016 U.S. Dist. LEXIS 135308, at *13-14 (D. Or. Sept. 30, 2016)

14  (exercising discretion in addressing an issue otherwise waived to "prevent a miscarriage of justice

15  and to preserve the integrity of the administrative hearing process").

16       The Court agrees with Plaintiff that one of the dispositive elements of the waiver

17  doctrine in the legal precedent is that the claimant be represented by the same attorney at the

18  administrative level as they are before the Court. <u>See</u> ECF No. 24, pg. 8; <u>see also</u> <u>Harris</u>, 2020

19  U.S. Dist. LEXIS 203150 at *19. Because different counsel represented Plaintiff in the

20  administrative hearings than the counsel she currently retains before this Court, and because her

21  counsel before the ALJ was a non-attorney, the Court chooses to exercise its discretion and

22  refrain from applying waiver. Plaintiff did not forfeit the issues of BPD, DQT, and CTS, and thus

23  is entitled to a severity determination of all proven impairments as well as due consideration of

24  the impairments throughout the disability determination process.

25  / / /

26  / / /

27  / / /

28  / / /

7

1          2.      Plaintiff's Impairments

2          To qualify for benefits, the plaintiff must have an impairment severe enough to

3   significantly limit the physical or mental ability to do basic work activities.  See 20 C.F.R. §§

4   404.1520(c), 416.920(c).[2]   In determining whether a claimant's alleged impairment is sufficiently

5   severe to limit the ability to work, the Commissioner must consider the combined effect of all

6   impairments on the ability to function, without regard to whether each impairment alone would be

7   sufficiently severe.  See Smolen v. Chater, 80 F.3d 1273, 1289-90 (9th Cir. 1996); see also 42

8   U.S.C. § 423(d)(2)(B); 20 C.F.R. §§ 404.1523 and 416.923.  An impairment, or combination of

9   impairments, can only be found to be non-severe if the evidence establishes a slight abnormality

10  that has no more than a minimal effect on an individual's ability to work.  See Social Security

11  Ruling (SSR) 85-28; see also Yuckert v. Bowen, 841 F.2d 303, 306 (9th Cir. 1988) (adopting

12  SSR 85-28).  The plaintiff has the burden of establishing the severity of the impairment by

13  providing medical evidence consisting of signs, symptoms, and laboratory findings.  See 20

14  C.F.R. §§ 404.1508, 416.908. The plaintiff's own statement of symptoms alone is insufficient.

15  See id.

16                  i.      Borderline Personality Disorder

17          Plaintiff contends that a psychiatric evaluation from 2011 noting "Borderline

18  Personality Disorder traits" sufficiently proves that BPD impairs Plaintiff. See ECF No. 17, pg.

19  19 (citing CAR 508). Upon review, the medical record states:

20          Of note, she has several traits concerning for borderline personality
            including impulsive behavior, affective instability, inappropriate anger,
21          splitting of staff (per nursing, though little evidence during interview with
            Dr. Bhatia). Though collateral from her PCP (Dr. Schooler-Smith, Shasta
22          Community Health Center) necessary to clarify [diagnosis].

23          CAR 508.

24  / / /

25  / / /

[2]       Basic work activities include: (1) walking, standing, sitting, lifting, pushing,
pulling, reaching, carrying, or handling; (2) seeing, hearing, and speaking; (3) understanding,
carrying out, and remembering simple instructions; (4) use of judgment; (5) responding
appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes
in a routine work setting.  See 20 C.F.R. §§ 404.1521, 416.921.

1    Traits of borderline personality disorder are not the same as a clear diagnosis of

2    BPD; nevertheless, signs and symptoms are sufficient to prove the existence of an impairment.

3    See 20 C.F.R. §§ 404.1508, 416.908. The medical record establishes that Plaintiff shows signs

4    and symptoms of BPD sufficient to satisfy the step two requirement. See CAR 508; ECF No. 17,

5    pg. 19. Yet, the ALJ does not mention BPD at Step 2 of its analysis or anywhere else in its report.

6    Accordingly, the ALJ erred by failing to discuss BPD within the severity determination.

7                          ii.    De Quervain's Tenosynovitis

8    Plaintiff similarly contends that the medical evidence proves she suffered from de

9    Quervain's tenosynovitis and the ALJ's failure to make a related severity determination is

10   harmful error. See ECF No. 17, pgs. 19-20. Medical records do note that Plaintiff was diagnosed

11   with DQT in 2009 and reported continued pain in her wrists in 2016. See CAR 681, 684, 732.

12   Yet, the ALJ does not mention DQT at Step 2 or anywhere else in the hearing decision. Without

13   addressing the severity of Plaintiff's DQT, the Court finds that the medical evidence is sufficient

14   to prove an impairment in Plaintiff's wrists. Accordingly, the ALJ erred by failing to discuss

15   DQT within the severity determination.

16                          iii.    Carpal Tunnel Syndrome

17   Plaintiff also argues that the ALJ's determination that Plaintiff's carpal tunnel

18   syndrome is non-severe is not supported by substantial evidence. See ECF No. 17, pgs. 19-20.

19   The ALJ acknowledged evidence in the medical record of hypertension, bilateral carpal tunnel

20   syndrome, status post releases, and plantar fasciitis, yet determined each of these impairments

21   non-severe. Specifically, the ALJ stated:

22        There is objective evidence in the medical record that the claimant has
          also been evaluated and treated for hypertension, bilateral carpal tunnel
23        syndrome, status post releases, and plantar fasciitis (Exhibits 3F/6, 4F/20,
          6F/19, 8F/33). However, these conditions were being managed medically,
24        and should be amenable to proper control by adherence to recommended
          medical management and medication compliance. Furthermore, no
25        aggressive treatment was recommended or anticipated for these
          conditions. Accordingly, the claimant's medically determinable
26        impairments of hypertension, bilateral carpal tunnel syndrome, status post
          releases, and plantar fasciitis are nonsevere.
27
          CAR 24.
28

                                            9

1    Plaintiff challenges the evidentiary basis of the ALJ's determination of non-
2  severity. The ALJ determined that because the carpal tunnel syndrome was being medically
3  managed such that the impairment had no more than a minimal effect on Plaintiff's ability to
4  work, it was not a severe impairment. See SSR 85-28; Yuckert, 841 F.2d at 306 (adopting SSR
5  85-28). Because the medical record can be rationally interpreted to support the ALJ's decision,
6  the Court does not find an error in the non-severity determination of CTS. See Thomas v.
7  Barnhart, 278 F.3d 947, 954 (9th Cir. 2002); CAR 678-680 (showing irregular medical office
8  visits and "normal" functioning).

9         **B.    Medical Opinion Evidence**

10    "The ALJ must consider all medical opinion evidence." Tommasetti v. Astrue,
11  533 F.3d 1035, 1041 (9th Cir. 2008) (citing 20 C.F.R. § 404.1527(b)). The ALJ errs by not
12  explicitly rejecting a medical opinion. See Garrison v. Colvin, 759 F.3d 995, 1012 (9th Cir.
13  2014). The ALJ also errs by failing to set forth sufficient reasons for crediting one medical
14  opinion over another. See id.

15    Under the regulations, only "licensed physicians and certain qualified specialists"
16  are considered acceptable medical sources. 20 C.F.R. § 404.1513(a); see also Molina v. Astrue,
17  674 F.3d 1104, 1111 (9th Cir. 2012). Where the acceptable medical source opinion is based on an
18  examination, the ". . . physician's opinion alone constitutes substantial evidence, because it rests
19  on his own independent examination of the claimant." Tonapetyan v. Halter, 242 F.3d 1144, 1149
20  (9th Cir. 2001). The opinions of non-examining professionals may also constitute substantial
21  evidence when the opinions are consistent with independent clinical findings or other evidence in
22  the record. See Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002).  Social workers are not
23  considered an acceptable medical source. See Turner v. Comm'r of Soc. Sec. Admin., 613 F.3d
24  1217, 1223-24 (9th Cir. 2010).  Nurse practitioners and physician assistants also are not
25  acceptable medical sources. See Dale v. Colvin, 823 F.3d 941, 943 (9th Cir. 2016). Opinions
26  from "other sources" such as nurse practitioners, physician assistants, and social workers may be
27  discounted provided the ALJ provides reasons germane to each source for doing so. See Popa v.
28  Berryhill, 872 F.3d 901, 906 (9th Cir. 2017), but see Revels v. Berryhill, 874 F.3d 648, 655 (9th

10

1   Cir. 2017) (quoting 20 C.F.R. § 404.1527(f)(1) and describing circumstance when opinions from

2   "other sources" may be considered acceptable medical opinions).

3              For claims filed before March 27, 2017, the weight given to medical opinions

4   depends in part on whether they are proffered by treating, examining, or non-examining

5   professionals.  See Lester v. Chater, 81 F.3d 821, 830-31 (9th Cir. 1995).  Ordinarily, more

6   weight is given to the opinion of a treating professional, who has a greater opportunity to know

7   and observe the patient as an individual, than the opinion of a non-treating professional.  See id.;

8   Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996); Winans v. Bowen, 853 F.2d 643, 647 (9th

9   Cir. 1987).  The least weight is given to the opinion of a non-examining professional.  See Pitzer

10  v. Sullivan, 908 F.2d 502, 506 & n.4 (9th Cir. 1990). The hierarchy of weighted opinion, although

11  superseded by statute, is applicable in the present case because Plaintiff's claim was filed prior to

12  March 27, 2017. See 20 C.F.R. § 416.920c(a); David F. M. v. Saul, No. 5:20-CV-013620AFM,

13  2021 WL 2646905, at *15-16 (C.D. Cal. June 25, 2021).

14             In addition to considering its source, to evaluate whether the Commissioner

15  properly rejected a medical opinion the court considers whether: (1) contradictory opinions are in

16  the record; and (2) clinical findings support the opinions.  The Commissioner may reject an

17  uncontradicted opinion of a treating or examining medical professional only for "clear and

18  convincing" reasons supported by substantial evidence in the record.  See Lester, 81 F.3d at 831.

19  While a treating professional's opinion generally is accorded superior weight, if it is contradicted

20  by an examining professional's opinion which is supported by different independent clinical

21  findings, the Commissioner may resolve the conflict.  See Andrews v. Shalala, 53 F.3d 1035,

22  1041 (9th Cir. 1995).

23             A contradicted opinion of a treating or examining professional may be rejected

24  only for "specific and legitimate" reasons supported by substantial evidence.  See Lester, 81 F.3d

25  at 830.  This test is met if the Commissioner sets out a detailed and thorough summary of the

26  facts and conflicting clinical evidence, states her interpretation of the evidence, and makes a

27  finding.  See Magallanes v. Bowen, 881 F.2d 747, 751-55 (9th Cir. 1989).  Absent specific and

28  legitimate reasons, the Commissioner must defer to the opinion of a treating or examining

professional.  See Lester, 81 F.3d at 830-31.  The opinion of a non-examining professional, without other evidence, is insufficient to reject the opinion of a treating or examining professional.  See id. at 831.  In any event, the Commissioner need not give weight to any conclusory opinion supported by minimal clinical findings.  See Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir. 1999) (rejecting treating physician's conclusory, minimally supported opinion); see also Magallanes, 881 F.2d at 751.

At Step 4, the ALJ considered the medical opinion evidence in determining Plaintiff's residual functional capacity. See CAR 25-30. The ALJ gave great weight to the opinion of Dr. White. See id. at 29. The ALJ gave partial weight to the opinion of Dr. Kyle. See id. The ALJ gave little weight to the opinion of Plaintiff's nurse practitioner, FNP Anjola. See id. at 29-30. The ALJ also gave little weight to the opinion of the agency medical consultants, Dr. Williams and Dr. DeSouza.[3] See id. at 30.

Specifically, the ALJ states:

> As for the opinion evidence, Miles White, Psy.D., the psychological consultative examiner, concluded that the claimant has no impairment in her ability to understand, remember, and carry out simple one or two-step job instructions. She has severe impairment in her ability to follow and complete detailed and complex instructions. She has mild impairment in her ability to relate and interact with coworkers and the public. She has moderate impairment in her ability to maintain concentration and attention, persistence, and pace. She has moderate impairment in her ability to associate with day-to-day work activity, including attendance and safety. She has moderate impairment in her ability to accept instructions from supervisors. She has moderate impairment in her ability to maintain regular attendance in the workplace and perform work activities on a consistent basis. She has moderate impairment in her ability to perform work activities without special or additional supervision (Exhibit 2F/8-9). I accord great weight to this opinion because Dr. White personally observed and examined the claimant and his opinion is consistent with the objective findings in the medical evidence of record.

> David J. Kyle, D.O., the internal consultative examiner, determined that the claimant can occasionally lift and/or carry 50 pounds; frequently lift and/or carry 25 pounds. Standing and walking can be done without limitations in a normal 8-hour workday. Sitting can be done without restrictions. She should avoid even moderate exposure to extreme cold, extreme heat, and hazards such as machinery, heights, etc. She should avoid overly stressful environments or situations which could result in

---

[3]    It should be noted that the ALJ made no mention of the medical opinions by Dr. Buerger (CAR 72-73) or Dr. Hawkins (CAR 104).

injury from falling (Exhibit 3F/6-7). I accord partial weight to this opinion because Dr. Kyle did not have the benefit of reviewing the other medical reports contained in the current record and this opinion is not consistent with the record in its entirety.

Laura Anjola, FNP-C, the claimant's nurse practitioner, opined the claimant must avoid even moderate exposure to extreme cold, extreme heat, wetness, humidity, fumes, odors, dusts, gases, poor ventilation, etc., and hazards; and must avoid all exposure to noise. Her impairments or treatment would cause her to be absent from work more than three times a month (Exhibit 7F /7). She is markedly limited in her ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods (Exhibit 7F/9). Because this opinion is not from an acceptable medical source and not consistent with the record as a whole, I give it less weight than other qualifying medical source opinions (20 CFR 404. 1 513(a)(e) and 416.913(a)(e)). Moreover, the opinion expressed is quite conclusory, providing very little explanation of the evidence relied on in forming that opinion.

The physical residual functional capacity assessment of the State agency medical consultants, B. Williams, M.D., and L. Desouza, M.D., found that the claimant can occasionally lift and/or carry 20 pounds; frequently lift and/or carry 10 pounds; stand and/or walk for 6 hours in an 8-hour workday; and sit for 6 hours in an 8-hour workday (Exhibits lA/11, 2A./l l, SA/12-13, 6A/12-13). I accord little weight to this opinion because the medical consultants did not have the benefit of personally observing and examining the claimant and this opinion is not consistent with the record as a whole.

CAR 29-30.

Plaintiff contends:

. . .The ALJ: failed to identify which portions of which opinions he was crediting and which portions he was not crediting; fail[ing] to provide even marginally valid reasons (much less clear and convincing reasons) for the acceptance or rejection of any aspect of any medical opinion; fail[ing] to identify even one page of medical record as a basis for his weighing decisions; and discredited some opinions for reasons (e.g., lack of access to the longitudinal medical record) that applied equally to other opinions given "great weight" by the ALJ.

ECF No. 17, pg. 7.

Plaintiff contends the ALJ erred by first, failing even to acknowledge the conflicts within the medical opinions, and second, failing to explain which of the conflicting opinions he was accepting and why. See ECF No. 17, pg. 22. According to Plaintiff, there are conflicting medical opinions relating to physical limitations, workplace environmental limitations, and

1   mental health impairments; yet, the ALJ did not provide a rationale when weighing the

2   conflicting opinions. See id. at 22-23.

3           In the area of physical limitations, the ALJ considered the opinions of Drs.

4   Williams and DeSouza, which conflicted with the opinion of Dr. Kyle. See ECF No. 17, pg. 22.

5   The ALJ gave little weight to the opinions of Drs. Williams and DeSouza because they were non-

6   examining professionals and because their opinions were inconsistent with the record as a whole.

7   See CAR 30. The ALJ gave partial weight to Dr. Kyle's opinion but seemingly used this opinion

8   as the basis for determining physical limitations. See CAR 29; ECF No. 17, pg. 23. The Court

9   finds that the ALJ's weighing of medical opinions pertaining to physical limitations did not

10  require a showing of substantial supporting evidence. Where there are conflicting opinions, the

11  ALJ must defer to the opinion of a treating or examining professional. See Lester, 81 F.3d at 830-

12  31. Because Drs. Williams and DeSouza were non-examining professionals, and Dr. Kyle was an

13  examining professional, the ALJ appropriately gave greater weight to Dr. Kyle's opinion without

14  providing "specific and legitimate reasons." See CAR 29-30, 384-85; See Lester, 81 F.3d at 830-

15  31.

16          Similarly, the Court finds that the ALJ had appropriate grounds for deferring to the

17  opinion of Dr. White on the matter of mental health impairments. Plaintiff contends that the ALJ

18  failed to explain why he relied on the opinion of Dr. White as opposed to the opinions of Drs.

19  Buerger and Hawkins who conducted a psychiatric review technique assessment. See ECF No.

20  17, pg. 23; CAR 72-73, 103-04. The Court agrees with the ALJ that Plaintiff conflates the ALJ's

21  psychiatric review technique (impairment severity) with the assessment of mental functionality

22  (RFC determination) and that the ALJ was not required to discuss the psychiatric assessment

23  when making an RFC determination. See ECF No. 21, pg. 18 (citing e.g. SSR 96-8p, 1996 WL

24  374184; Stubbs-Danielson v. Astrue, 539 F.3d 1169, 1173-74 (9th Cir. 2008)). It follows then

25  that because Dr. White was an examining professional, the ALJ was permitted to defer to his

26  opinion.  See CAR 29-30; Lester, 81 F.3d at 830-31.

27  / / /

28  / / /

1    Plaintiff puts forward other arguments challenging the ALJ's weighing of medical

2   opinion evidence, each of which fails for the reasons listed above. See ECF No. 17, pgs. 24-28.

3   Plaintiff is correct that, where substantial evidence is required, inconsistency with the record

4   alone is not a valid reason for finding adverse credibility because it lacks specificity. However,

5   where the opinion of an examining physician is contradicted merely by the opinion of a non-

6   examining physician, as is the case here, the ALJ may defer to the examiner's opinion. See

7   Lester, 81 F.3d at 830.

8    Here, Dr. White was the only examining physician regarding mental health

9   impairments, and it is his opinion on which the ALJ bases its RFC assessment. See CAR 30. Dr.

10   Kyle was the only examining physician regarding physical limitations, and it is his opinion on

11   which the ALJ seemingly bases its exertional and workplace limitations. See ECF No. 17, pg. 23.

12   The ALJ may have committed an error by failing to adequately explain its reasoning for weighing

13   the medical opinion evidence as it did, but the Court finds that any error committed did not cause

14   harm to the Plaintiff. Because the RFC determination found Plaintiff's impairments more

15   restrictive than what was suggested by the discredited opinions, any error would not have been

16   outcome determinative and thus is not reversible error. See ECF No. 21, pg. 17-19.

17    However, while the ALJ has not committed an independent error at Step 4 in

18   weighing the medical opinions, the error at Step 2 indicates that the ALJ may not have accounted

19   for all of Plaintiff's impairments when considering those medical opinions. See Lewis v. Astrue,

20   498 F.3d 909, 911 (9th Cir. 2007) (holding that failure to consider bursitis at Step 2 was harmless

21   because the impairment was considered at Step 4); Richard v. Colvin, No. C13-6055 RBL, 2015

22   WL 2085610, at *4 (W.D. Wash. May 5, 2015). Because the ALJ failed to mention several

23   impairments evidenced in the medical record, there is some uncertainty as to whether the ALJ

24   properly weighed the various medical opinions at Step 4. See Vasquez v. Astrue, 572 F.3d 586,

25   597 (9th Cir. 2009). In light of the Step 2 errors and the fact that the case must be remanded, the

26   ALJ should reconsider the medical evidence taking into account all of the severe impairments that

27   affect Plaintiff's ability to work.

28   / / /

1        **C.      Plaintiff's Statements and Testimony**

2              The Commissioner determines whether a disability applicant is credible, and the

3    court defers to the Commissioner's discretion if the Commissioner used the proper process and

4    provided proper reasons.  See Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1996).  An explicit

5    credibility finding must be supported by specific, cogent reasons.  See Rashad v. Sullivan, 903

6    F.2d 1229, 1231 (9th Cir. 1990).  General findings are insufficient.  See Lester v. Chater, 81 F.3d

7    821, 834 (9th Cir. 1995).  Rather, the Commissioner must identify what testimony is not credible

8    and what evidence undermines the testimony.  See id.  Moreover, unless there is affirmative

9    evidence in the record of malingering, the Commissioner's reasons for rejecting testimony as not

10   credible must be "clear and convincing."  See id.; see also Carmickle v. Commissioner, 533 F.3d

11   1155, 1160 (9th Cir. 2008) (citing Lingenfelter v. Astrue, 504 F.3d 1028, 1036 (9th Cir. 2007),

12   and Gregor v. Barnhart, 464 F.3d 968, 972 (9th Cir. 2006)).

13             If there is objective medical evidence of an underlying impairment, the

14   Commissioner may not discredit a claimant's testimony as to the severity of symptoms merely

15   because they are unsupported by objective medical evidence. See Bunnell v. Sullivan, 947 F.2d

16   341, 347-48 (9th Cir. 1991) (en banc). As the Ninth Circuit explained in Smolen v. Chater:

17                    The claimant need not produce objective medical evidence of the
                  [symptom] itself, or the severity thereof.  Nor must the claimant produce
18                objective medical evidence of the causal relationship between the
                  medically determinable impairment and the symptom.  By requiring that
19                the medical impairment "could reasonably be expected to produce" pain or
                  another symptom, the Cotton test requires only that the causal relationship
20                be a reasonable inference, not a medically proven phenomenon.

21                80 F.3d 1273, 1282 (9th Cir. 1996) (referring to the test established in
                  Cotton v. Bowen, 799 F.2d 1403 (9th Cir. 1986)).
22

23             The Commissioner may, however, consider the nature of the symptoms alleged,

24   including aggravating factors, medication, treatment, and functional restrictions.  See Bunnell,

25   947 F.2d at 345-47.  In weighing credibility, the Commissioner may also consider: (1) the

26   claimant's reputation for truthfulness, prior inconsistent statements, or other inconsistent

27   testimony; (2) unexplained or inadequately explained failure to seek treatment or to follow a

28   prescribed course of treatment; (3) the claimant's daily activities; (4) work records; and (5)

1   physician and third-party testimony about the nature, severity, and effect of symptoms.  See

2   Smolen, 80 F.3d at 1284 (citations omitted).  It is also appropriate to consider whether the

3   claimant cooperated during physical examinations or provided conflicting statements concerning

4   drug and/or alcohol use.  See Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002).  If the

5   claimant testifies as to symptoms greater than would normally be produced by a given

6   impairment, the ALJ may disbelieve that testimony provided specific findings are made.  See

7   Carmickle, 533 F.3d at 1161 (citing Swenson v. Sullivan, 876 F.2d 683, 687 (9th Cir. 1989)).

8           At Step 4, the ALJ evaluated Plaintiff's statements and testimony. See CAR 25-30.

9   The ALJ began by summarizing Plaintiff's statements and testimony as follows:

10          The claimant alleged that she is unable to work because of ruptured brain
            aneurysm and anxiety (Exhibit 2E/2). She reported that she has very low
11          stress tolerance. Too much stress causes extreme anxiety. Stress and
            anxiety cause high blood pressure which then increases her risk for a re-
12          rupture of her brain aneurysm. She can only pay attention for five minutes
            and cannot finish what she starts (Exhibit 6E/1, 6). She has severe
13          headaches 5-6 times per week (Exhibit l0E/1). Her anxiety prevents her
            from barely leaving her house. Her heart races, throat closes, and she has
14          shortness of breath and shakiness. She walks a few hundred feet to the
            store and lifts a 20 pound bag of cat food once a month. She requires a rest
15          period or nap once a day for two and a half hours (Exhibit 1 lE/1-3). At
            the hearing, the claimant testified that she cannot be around people due to
16          anxiety. She treats her anxiety by taking medication and staying at home.
            She also has bilateral foot pain, chest pain, and cluster headaches. The last
17          three weeks, she had headaches every day. She has panic attacks at least 4-
            5 times a week any time she leaves her house. She naps three hours a day.
18          The claimant's friend, Steven Klein II, generally corroborates the
            claimant's daily activities and abilities (Exhibit 7E).
19
            CAR 25-26.
20

21          The ALJ then provided an extensive summary of the longitudinal medical history,

22   starting in 2015 and continuing through 2018. See id. at 26-29. Regarding this evidence, the ALJ

23   stated:

24          After careful consideration of the evidence, I find that the claimant's
            medically determinable impairments could reasonably be expected to
25          produce the above alleged symptoms; however, the claimant's and her
            friend's statements concerning the intensity, persistence and limiting
26          effects of these symptoms are not entirely consistent with the medical
            evidence and other evidence in the record for the reasons explained in this
27          decision. Accordingly, these statements have been found to affect the
            claimant's ability to work only to the extent they can reasonably be
28          accepted as consistent with the objective medical and other evidence.

17

1

2

3

4

5

6

  I find the claimant's allegations less than fully consistent with the evidence. The claimant has not generally received the type of medical treatment one would expect for a totally disabled individual. The record reflects significant gaps in the claimant's history of treatment and relatively infrequent trips to the doctor for the allegedly disabling symptoms. Furthermore, the claimant's use of medications does not suggest the presence of impairments which is more limiting than found in this decision. The claimant has been prescribed and has taken appropriate medications for the alleged impairments, which weighs in the claimant's favor, but the medical records reveal that the medications have been relatively effective in controlling the claimant's symptoms.

7

  CAR 28-29.

8

9

  The ALJ concluded by saying: "In sum, the above residual functional capacity assessment is supported by the opinion of Dr. White and the medical evidence of record." CAR 30.

10

11

12

13

14

15

16

  Plaintiff contends: "The overarching defect in this attempted justification for discrediting some unspecified aspect or aspects of Ms. Lee-Klein's testimony is the ALJ's complete and total failure to 'specifically identify the testimony she or he finds not to be credible,' a failure that unequivocally constitutes reversible error." ECF No. 17, pg. 30. Plaintiff also asserts that the ALJ failed to satisfy the "specific, clear and convincing" reasons standard and that the ALJ failed to cite a single page of the medical record in support of its determinations. See id.; Lingenfelter v. Astrue, 504 F.3d 1028, 1036 (9th Cir. 2007).

17

18

19

20

21

22

23

24

25

26

27

  Although questions of credibility are functions solely of the ALJ, credibility findings must be supported by specific, cogent reasons. See Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995); Greger v. Barnhart, 464 F.3d 958, 972 (9th Cir. 2006). The ALJ discredited Plaintiff's testimony because it is "less than fully consistent with the evidence." CAR 29. The Commissioner contends that the ALJ did provide clear and convincing evidence sufficient to support an adverse credibility finding by reason of inconsistencies between Plaintiff's testimony and the medical record. See Marsh v. Colvin, 792 F.3d 1170, 1173 n.2 (9th Cir. 2015) (gaps in a claimant's treatment regimen are a specific, clear, and convincing reason for rejecting the claimant's testimony about symptom severity). The Court agrees with the Commissioner that inconsistencies between Plaintiff's testimony and the record suffice as clear and convincing reasons to support the ALJ's analysis.

28

/ / /

18

1    　　　　The ALJ found Plaintiff's statements less than credible based on the following

2    inconsistencies with the medical record: (1) significant gaps in Plaintiff's treatment, (2)

3    infrequent trips to the doctor, (3) Plaintiff's use of medication as inconsistent with the alleged

4    severity of her impairments, and (4) the effectiveness of medications in controlling Plaintiff's

5    symptoms. Similar to <u>Marsh</u>, the ALJ has provided "detailed instances" from the medical record

6    supporting his adverse credibility determination. <u>See</u> <u>Marsh v. Commissioner of Social Sec.</u>

7    <u>Admin.</u>, No. C 11-02096 CRB, 2012 WL 1496142 at *7 (N.D. Cal. Apr. 27, 2012), <u>vacated and</u>

8    <u>remanded sub nom.</u> <u>Marsh v. Colvin</u>, 792 F.3d 1170 (9th Cir. 2015). <u>See</u> <u>generally</u> CAR 25-30.

9    Plaintiff has ignored the ALJ's thorough discussion of Plaintiff's treatment history which

10   provides substantial evidence supporting the ALJ's reasoning. Because the ALJ's findings are

11   "properly supported by the record" such that "a reviewing court [could] conclude the adjudicator

12   rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit [their]

13   testimony," the ALJ's findings are entitled to deference. <u>See</u> <u>Bunnell v. Sullivan</u>, 947 F.2d 341,

14   345-46 (9th Cir. 1991) (en banc).

15   　　　　However, along with the weighing of the medical evidence, the ALJ's discrediting

16   of Plaintiff's testimony may not be entirely free of error in light of the Step 2 omissions. While

17   the ALJ's credibility decision appears to have appropriately weighed Plaintiff's statements

18   against the objective medical evidence, the failure to mention the impairments omitted at Step 2

19   casts doubt upon the credibility determination as a whole. Upon remand, the ALJ should consider

20   all of Plaintiff's proven severe impairments when comparing Plaintiff's testimony to the record.

21   　　　　**D.**　　**<u>Lay Witness Evidence</u>**

22   　　　　In determining whether a claimant is disabled, an ALJ generally must consider lay

23   witness testimony concerning a claimant's ability to work.  <u>See</u> <u>Dodrill v. Shalala</u>, 12 F.3d 915,

24   919 (9th Cir. 1993); 20 C.F.R. §§ 404.1513(d)(4) & (e), 416.913(d)(4) & (e).  Indeed, "lay

25   testimony as to a claimant's symptoms or how an impairment affects ability to work is competent

26   evidence . . . and therefore cannot be disregarded without comment."  <u>See</u> <u>Nguyen v. Chater</u>, 100

27   F.3d 1462, 1467 (9th Cir. 1996).  Consequently, "[i]f the ALJ wishes to discount the testimony of

28   lay witnesses, he must give reasons that are germane to each witness."  <u>Dodrill</u>, 12 F.3d at 919.

When rejecting third party statements which are similar in nature to the statements of plaintiff, the ALJ may cite the same reasons used by the ALJ in rejecting the plaintiff's statement.  See Valentine v. Commissioner Soc. Sec. Admin., 574 F.3d 685, 694 (9th Cir. 2009) (approving rejection of a third-party family member's testimony, which was similar to the claimant's, for the same reasons given for rejection of the claimant's complaints).

At Step 4, the ALJ evaluated the credibility of lay witness testimony by Plaintiff's friend, Steven Klein II. The ALJ said regarding this testimony:

> I have read and considered the third-party function report completed by the claimant's friend, Steven Klein 11, on May 25, 2015 (Exhibit 7E). The statements made by the claimant's friend have not been given under oath and appear to be no more than a parroting of the subjective complaints already testified to and reported by the claimant.

CAR 30.

Plaintiff argues that the ALJ improperly disregarded the testimony of Mr. Klein. See ECF No. 17, pg. 31-32. Plaintiff asserts that, because the ALJ's reasons lack specificity, they are not "germane to [the] witness." See id. at 32. Plaintiff further claims that the reasons provided by the ALJ for discrediting Mr. Klein's testimony are meritless. Id. Defendant contends that, because the testimony of Mr. Klein is so similar to that of Plaintiff's testimony, the reasons given for discrediting Plaintiff's testimony suffice as a basis for disregarding Mr. Klein's testimony as well. See ECF No. 21, pg. 21; Valentine, 574 F.3d at 694. The Court agrees with Defendant.

As the ALJ states, Mr. Klein's report generally corroborates Plaintiff's daily activities and abilities. See CAR 26, 30; compare also CAR 273-81 with CAR 40-53, 226, 260-68, 296-97, 299-301. Because Mr. Klein's statements are similar in nature to Plaintiff's statements, the ALJ may cite the same reasons used in rejecting Plaintiff's statements to reject Mr. Klein's statements. See Valentine, 574 F.3d at 694. As previously discussed, the ALJ had sufficient grounds to reject Plaintiff's testimony and, accordingly, the ALJ appropriately discounted Mr. Klein's third-party function report which was sufficiently similar. The Court does not find the ALJ's discrediting of law witness testimony grounds for reversible error. However, in the same way that the ALJ must reconsider the other evidence at Step 4, the lay witness testimony should be reexamined upon remand in light of the Step 2 errors.

20

1    **E.    Residual Functional Capacity Assessment**

2    Residual functional capacity is what a person "can still do despite [the

3    individual's] limitations." 20 C.F.R. §§ 404.1545(a), 416.945(a) (2003); see also Valencia v.

4    Heckler, 751 F.2d 1082, 1085 (9th Cir. 1985) (residual functional capacity reflects current

5    "physical and mental capabilities").  Thus, residual functional capacity describes a person's

6    exertional capabilities in light of his or her limitations.[4] In determining a claimant's residual

7    functional capacity, an ALJ must assess all the evidence (including the claimant's and others'

8    descriptions of limitation, and medical reports) to determine what capacity the claimant has for

9    work despite his or her impairment(s). See 20 C.F.R. §§ 404.1545(a), 416.945(a); Laborin, 867

10   F.3d at 1153; Lewis v. Astrue, 498 F.3d 909, 911 (9th Cir. 2007); Stout v. Comm'r, Soc. Sec.

11   Admin., 454 F.3d 1050 (9th Cir. 2006).

12   Plaintiff alleges that the ALJ's ultimate residual functional capacity assessment is

13   flawed due to errors regarding severity, evaluation of medical opinions, evaluation of Plaintiff's

14   statements and testimony, and evaluation of lay witness evidence. See ECF No. 17, pgs. 33-34.

15   Specifically, Plaintiff argues:

16   First, and as discussed above in § 7.1, the ALJ failed to ever
     mention once, anywhere in his decision, diagnosed impairments including
17   BPD, de Quervain's tenosynovitis, and failed to ever mention them in
     assessing the RFC.
18   Second, and is also discussed above in § 7.1, in assessing the RFC,
     the ALJ failed to consider impairments erroneously found. Non-severe at
19   Step two.

20   / / /

21   _____

22   [4]    Exertional capabilities are the primary strength activities of sitting, standing,
     walking, lifting, carrying, pushing, or pulling and are generally defined in terms of ability to
     perform sedentary, light, medium, heavy, or very heavy work.  See 20 C.F.R., Part 404, Subpart
23   P, Appendix 2, § 200.00(a).  "Sedentary work" involves lifting no more than 10 pounds at a time
     and occasionally lifting or carrying articles like docket files, ledgers, and small tools.  See 20
24   C.F.R. §§ 404.1567(a) and 416.967(a).  "Light work" involves lifting no more than 20 pounds at
     a time with frequent lifting or carrying of objects weighing up to 10 pounds.  See 20 C.F.R. §§
25   404.1567(b) and 416.967(b).  "Medium work" involves lifting no more than 50 pounds at a time
     with frequent lifting or carrying of objects weighing up to 25 pounds.  See 20 C.F.R. §§
26   404.1567(c) and 416.967(c).  "Heavy work" involves lifting no more than 100 pounds at a time
     with frequent lifting or carrying of objects weighing up to 50 pounds.  See 20 C.F.R. §§
27   404.1567(d) and 416.967(d).  "Very heavy work" involves lifting objects weighing more than 100
     pounds at a time with frequent lifting or carrying of objects weighing 50 pounds or more.  See 20
28   C.F.R. §§ 404.1567(e) and 416.967(e).

1

2

3

4

5

6

7

8

9

10

11

12

13

          Third, the ALJ failed to give consideration to impairments identified in medical opinion wrongfully disregarded by the ALJ, such as the exertional limitations identified by the state agency medical records reviewers (e.g., 20 pounds occasionally, 10 pounds frequently (AR 74 (Initial), 105 (Reconsideration)).

          Fourth, the RFC fails to take reasonable account of Ms. Lee-Klein's testimony about the debilitating impact of her anxiety disorder with panic attacks, which leaves her virtually incapable of venturing out of her home.

          Fifth, in finding Ms. Lee-Klein capable of light work with no exertional limitations, the ALJ failed to reasonably account for the vastly increased risk of a new aneurysm if Ms. Lee-Klein's blood pressure increases even slightly and further failed to consider the added burden on her anxiety disorder that this risk would create.

          Sixth, the RFC failed to include manipulative limitations despite the facts that: (1) Ms. Lee-Klein's carpal tunnel syndrome had returned a year after carpal tunnel release surgery, as evidenced by a positive result to the Phalen's Maneuver test (AR 679); (2) Ms. Lee-Klein testing positive for de Quervain's tenosynovitis (AR 681), a painful and crippling wrist issue separate from carpal tunnel syndrome; and (3) results of the grip strength test administered by the Commissioner's own expert (D.O. Kyle), which showed Ms. Lee-Klein with less than half of normal grip.

ECF No. 17, pgs. 33-34.

14

15

16

17

18

19

20

21

22

          As discussed above, the Court agrees with Plaintiff that the ALJ committed reversible error by failing to mention proven impairments throughout his decision. Medical evidence of physical impairments (carpal tunnel syndrome and de Quervain's tenosynovitis) and mental impairments (bipolar personality disorder and anxiety) was omitted from the ALJ's discussion at Step 2.  Additionally, the ALJ has presented no discussion regarding how these impairments might affect a determination of Plaintiff's residual functioning capacity at Step 4. Accordingly, there are no facts present indicating a proper outcome of the residual functioning capacity or the ultimate disability evaluation. See Vasquez v. Astrue, 572 F.3d 586, 597 (9th Cir. 2009).

23

24

          On remand, the ALJ should consider how all of Plaintiff's proven impairments affect her residual functioning capacity and ability to perform work.

25

/ / /

26

/ / /

27

/ / /

28

/ / /

1    **F.      Vocational Findings**

2    The Medical-Vocational Guidelines (Grids) provide a uniform conclusion about

3    disability for various combinations of age, education, previous work experience, and residual

4    functional capacity.  The Grids allow the Commissioner to streamline the administrative process

5    and encourage uniform treatment of claims based on the number of jobs in the national economy

6    for any given category of residual functioning capacity.  See Heckler v. Campbell, 461 U.S. 458,

7    460-62 (1983) (discussing creation and purpose of the Grids).

8    The Commissioner may apply the Grids in lieu of taking the testimony of a

9    vocational expert only when the Grids accurately and completely describe the claimant's abilities

10   and limitations.  See Jones v. Heckler, 760 F.2d 993, 998 (9th Cir. 1985); see also Heckler v.

11   Campbell, 461 U.S. 458, 462 n.5 (1983).  Thus, the Commissioner generally may not rely on the

12   Grids if a claimant suffers from non-exertional limitations because the Grids are based on

13   exertional strength factors only.  See 20 C.F.R., Part 404, Subpart P, Appendix 2, § 200.00(b). "If

14   a claimant has an impairment that limits his or her ability to work without directly affecting his

15   or her strength, the claimant is said to have non-exertional . . . limitations that are not covered by

16   the Grids." Penny v. Sulliacvan, 2 F.3d 953, 958 (9th Cir. 1993) (citing 20 C.F.R., Part 404,

17   Subpart P, Appendix 2, § 200.00(d), (e)).  The Commissioner may, however, rely on the Grids

18   even when a claimant has combined exertional and non-exertional limitations, if non-exertional

19   limitations do not impact the claimant's exertional capabilities.  See Bates v. Sullivan, 894 F.2d

20   1059, 1063 (9th Cir. 1990); Polny v. Bowen, 864 F.2d 661, 663-64 (9th Cir. 1988).

21   In cases where the Grids are not fully applicable, the ALJ may meet his burden

22   under step five of the sequential analysis by propounding to a vocational expert hypothetical

23   questions based on medical assumptions, supported by substantial evidence, that reflect all the

24   plaintiff's limitations.  See Roberts v. Shalala, 66 F.3d 179, 184 (9th Cir. 1995).  Specifically,

25   where the Medical-Vocational Guidelines are inapplicable because the plaintiff has sufficient

26   non-exertional limitations, the ALJ is required to obtain vocational expert testimony.  See

27   Burkhart v. Bowen, 587 F.2d 1335, 1341 (9th Cir. 1988).

28

23

1        Hypothetical questions posed to a vocational expert must set out all the substantial,

2   supported limitations and restrictions of the particular claimant.  See Magallanes v. Bowen, 881

3   F.2d 747, 756 (9th Cir. 1989).  If a hypothetical does not reflect all the claimant's limitations, the

4   expert's testimony as to jobs in the national economy the claimant can perform has no evidentiary

5   value.  See DeLorme v. Sullivan, 924 F.2d 841, 850 (9th Cir. 1991).  While the ALJ may pose to

6   the expert a range of hypothetical questions based on alternate interpretations of the evidence, the

7   hypothetical that ultimately serves as the basis for the ALJ's determination must be supported by

8   substantial evidence in the record as a whole.  See Embrey v. Bowen, 849 F.2d 418, 422-23 (9th

9   Cir. 1988).

10        At Step 5, the ALJ determined that Plaintiff could not perform past relevant work,

11   stating:

12        The impartial vocational expert, Joy Yoshioka, testified that the claimant
          has past work as a cleaner (DOT 323.687-014), light, unskilled (SVP 2);
13        data entry clerk (DOT 203.582-054), sedentary, semiskilled (SVP 4); and
          retail clerk (DOT 279.357-054), light, semiskilled (SVP 3). I find that this
14        constitutes the claimant's past relevant work (Exhibits 2E/4, 5E, and
          Testimony). According to Ms. Yoshioka, the demands of the claimant's
15        past relevant work exceed the residual functional capacity. I accept that
          testimony and conclude the claimant cannot perform past relevant work.
16
          CAR 30.
17
                The ALJ then went on to determine whether, in light of Plaintiff's residual
18
     functional capacity, she could engage in other types of substantial gainful work. Considering
19
     Plaintiff's age, education, work experience, and residual functional capacity in conjunction with
20
     the Medical-Vocational Guidelines and the vocational expert opinion, the ALJ determined that
21
     Plaintiff could perform light, unskilled labor such as that of a garment folder, stock checker, or
22
     collator. Id. The ALJ concluded that, accordingly, Plaintiff is not disabled. Id.
23
                Plaintiff contends:
24
          The ALJ's Step five finding that Ms. re-Klein can perform jobs
25        with an SVP of 2 is simply impossible to reconcile with his finding at Step
          four that Ms. Klein's post-ruptured aneurysm cognitive and memory
26        deficits precluded her to return to her old job, which not only has the exact
          same SVP (2) but which, after many years working it, one would assume
27        she could perform drunk hanging upside down from a bungee cord. The
          ALJ's failure to explain this glaring anomaly precludes affirming the Step
28        five finding of other jobs available.

1        ECF No. 17, pg. 35.

2

3        The Court does not assume that Plaintiff could perform her old job of cleaner in the colorful manner described by her counsel. The Court also notes that the tone taken by Plaintiff's counsel is unimpressive and unnecessary, and does not make his creative legal arguments any more persuasive. As to the issue of Step 5, Plaintiff cites no legal authority in support of her challenge to the ALJ's use of a vocational expert. Here, the ALJ properly obtained vocational expert testimony in lieu of reliance on the Grids, meeting the Step 5 burden. The Court finds no independent error at Step 5, but does recognize that, consistent with the rest of this opinion, the errors committed at Step 2 persist throughout the ALJ's decision. Because the ALJ's Step 5 findings are based on a residual functioning capacity that does not necessarily represent all of Plaintiff's impairments, the ALJ's vocational findings are faulty. Upon remand, the ALJ should consider all of Plaintiff's severe impairments when determining Plaintiff's ability to engage in other work.

### IV.  CONCLUSION

       For the foregoing reasons, this matter will be remanded under sentence four of 42 U.S.C. § 405(g) for further development of the record and/or further findings addressing the deficiencies noted above.

       Accordingly, IT IS HEREBY ORDERED that:

       1.       Plaintiff's motion for summary judgment, ECF No. 17, is granted;

       2.       Defendant's motion for summary judgment, ECF No. 21, is denied;

       3.       The Commissioner's final decision is reversed, and this matter is remanded for further proceedings consistent with this order; and

       4.       The Clerk of the Court is directed to enter judgment and close this file.

Dated:  August 6, 2021



DENNIS M. COTA
UNITED STATES MAGISTRATE JUDGE